Jeanette **JOHNSON** d/b/a The Crazy Horse, Appellant,

v.

Anthony **TAIT**, Appellee.

No. S–2361.

Supreme Court of Alaska.

May 12, 1989.

Rex Lamont Butler, Anchorage, for appellant.

Shawn J. Holliday, Robinson, Devine & Holliday, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

---

## OPINION

MOORE, Justice.

This appeal presents the question whether article I, section 5 of the Alaska Constitution guarantees a patron's right of free expression against infringement by the owner of a tavern. The superior court answered this question in the affirmative and permanently enjoined the tavern owner from prohibiting the display of motorcycle club "colors" in the tavern. We reverse for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Anthony Tait is a member of the Hell's Angels motorcycle club. He wears the club "colors" on his motorcycle jacket to identify himself as a club member.[1]

One evening Tait went to the Crazy Horse bar in Anchorage. A sign near the door prohibits wearing club colors, as well as pimping, prostitution, intoxication, cameras and entry by minors. Even though Tait was wearing the club colors, the door attendant admitted him, and the bartender served him a beer. The door attendant then approached Tait and told him that he could not remain in the bar wearing colors. Tait left rather than remove his jacket.

Tait filed suit against Jeanette Johnson, owner of the Crazy Horse, seeking a permanent injunction against enforcement of the no-colors policy. Superior Court Judge Joan M. Katz entered summary judgment for Tait and granted injunctive relief. She then found that Tait was a public interest

plaintiff entitled to full reasonable attorney's fees of $12,000. Johnson appeals.

## II. STANDARD OF REVIEW

A summary judgment is affirmed when the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985); Alaska R.Civ.P. 56(c). All reasonable inferences of fact must be drawn in favor of Johnson, the non-moving party. 699 P.2d at 1280.

The question whether article I, section 5 of the Alaska Constitution prohibits private infringement on free expression is a question of law. We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. INTRODUCTION

Johnson argues that the superior court erred in granting summary judgment because article I, section 5 of the Alaska Constitution[2] applies only to state action.[3] Tait contends that he was entitled to judgment as a matter of law because the constitution does not contain a state action requirement.[4]

"The free speech clause of the Alaska Constitution, [a]rticle I, [s]ection 5, was meant to be at least as protective of expression as the [f]irst [a]mendment to the United States Constitution." *Mickens v. City of Kodiak*, 640 P.2d 818, 820 (Alaska 1982) (footnote omitted). The question before the court is whether it protects the

---

1. Tait displays the colors in the form of a custom-made leather patch which is incorporated into his motorcycle jacket. The emblem is a skull with wings. The words "Hell's Angels" appears above the emblem; the word "Alaska" below. The patch cost $400.

2. Alaska Const. art. I, § 5 provides:

    Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.

3. Johnson's contention that the Hell's Angels' emblem is not "speech" protected by the first amendment is patently wrong. *See Tinker v. Des Moines Community School Dist.*, 393 U.S.

503, 505–06, 89 S.Ct. 733, 735–36, 21 L.Ed.2d 731, 737 (1969) (first amendment protects right to wear black armbands to protest Vietnam conflict); *United States v. Rubio*, 727 F.2d 786, 791 (9th Cir.1983) (first amendment protects right of Hell's Angels club members to associate with each other and with the club); *Village of Skokie v. National Socialist Party*, 69 Ill.2d 605, 14 Ill.Dec. 890, 373 N.E.2d 21, 24–25 (1978) (per curiam) (swastika is symbolic political speech intended to convey the beliefs of those displaying it; display cannot be enjoined on grounds that it may provoke a violent reaction in those who see it).

4. Tait does not argue that state action exists.

right of free expression against infringement by the owner of private property.

Tait relies on a line of cases addressing the question whether private shopping center owners must permit picketing, handbilling or signature-gathering on their premises. The shopping center cases may be traced to the United States Supreme Court decision in *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

## IV. THE FIRST AMENDMENT AND PRIVATE PROPERTY

In *Marsh v. Alabama,* Grace Marsh, a Jehovah's Witness, was arrested for distributing religious literature on the streets of Chickasaw, Alabama, without a permit. *Id.* at 503, 66 S.Ct. at 276-77. Chickasaw was a company town owned by the Gulf Shipbuilding Corporation; the town management prohibited solicitation of any kind without a permit. *Id.* at 502-03, 66 S.Ct. at 276-77. Marsh argued that this prohibition violated the first amendment of the United States Constitution.[5]

The United States Supreme Court ruled that the private ownership of the streets and sidewalks of Chickasaw did not defeat the constitutional claim:

> We do not agree that the corporation's property interests settle the question. The State urges in effect that the corporation's right to control the inhabitants of Chickasaw is coextensive with the right of a homeowner to regulate the conduct of his guests. We cannot accept that contention. Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.

*Id.* at 505-06, 66 S.Ct. at 278-79 (footnote omitted). The Court focused on the fact that Chickasaw was a town like any other and that its business block served as the community shopping center. *Id.* at 508, 66

S.Ct. at 279. Thus, regardless of the incidents of ownership, the public had a strong interest in ensuring that channels of communication remained free and open. *Id.* at 507-08, 66 S.Ct. at 279-80. The Court concluded that the first amendment entitled Marsh to exercise her right of free expression, notwithstanding the private property rights asserted by Chickasaw's corporate owner. *Id.* at 509, 66 S.Ct. at 280.

Twenty-two years later, a divided Court extended the decision in *Marsh* and held that the first amendment prohibits the owners of land on which a shopping center is situated from enjoining peaceful labor picketing of a business in the center. *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). The Court noted that Logan Valley Plaza had a perimeter of almost 1.1 miles, contained two large stores and 15 smaller establishments, and had sidewalks and painted roadways for use by the public. *Id.* at 317-18 & n. 8, 88 S.Ct. at 1608 & n. 8. The Court also remarked on the expanding role of the suburban shopping center in modern society and expressed concern that such centers could effectively insulate themselves from public criticism by surrounding themselves with a buffer zone of private property. *Id.* at 324-25, 88 S.Ct. at 1611. Justice Douglas began his concurrence by noting that *Logan Valley* presented "a totally different question from an invasion of one's home or place of business." *Id.* at 325-26, 88 S.Ct. at 1612-13.

In *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the Court severely circumscribed *Logan Valley* when it ruled that the private owner of a shopping center may prohibit political handbilling unrelated to the shopping center's operations. The court rejected the handbillers' argument that the shopping center was constrained by the first amendment merely because it was "open to the public"; the Court noted that this theory

5. U.S. Const. amend. I provides:
   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

would apply to almost every retail or service establishment in the country. *Id.* at 565, 92 S.Ct. at 2227. Instead, the court stated that "property [does not] lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a freestanding store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there." *Id.* at 569, 92 S.Ct. at 2229; *accord Central Hardware v. National Labor Relations Bd.,* 407 U.S. 539, 546–47, 92 S.Ct. 2238, 2242–43, 33 L.Ed.2d 122 (1972) (private property not subject to first amendment unless it assumes "the functional attributes of public property devoted to public use").

Four years later, in *Hudgens v. National Labor Relations Board,* 424 U.S. 507, 518, 96 S.Ct. 1029, 1035, 47 L.Ed.2d 196 (1976), the Court expressly overruled *Logan Valley,* concluding that its rationale did not survive the decision in *Lloyd.* Thus, except in the case of a company town, the first amendment does not guarantee freedom of speech against private infringement; it only protects against abridgement by the federal or state government. *Id.* 424 U.S. at 513, 96 S.Ct. at 1033. After the decision in *Hudgens,* the only question remaining was whether a state might interpret its constitution to prevent the owner of private property from infringing the right of free expression.

## V. STATE CONSTITUTIONAL PROTECTION OF FREE EXPRESSION

In *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), *aff'd,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), the California Supreme Court held that solicitation of signatures for a political petition on private property is activity protected by the California Constitution.[6] 592 P.2d at 347–48.

The court stated that shopping centers have become the commercial hubs of modern suburbia and noted that the Pruneyard Shopping Center contained 5 acres for parking and 16 acres of walkways, plazas, and buildings containing 65 shops, 10 restaurants and a cinema.[7] *Id.* at 342, 344–45. However, the court clearly established that there are limits on the exercise of free expression:

> By no means do we imply that those who wish to disseminate ideas have free rein. We noted above Chief Justice Traynor's endorsement of time, place, and manner rules. Further, as Justice Mosk stated in *Diamond II,* "It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment."

*Id.* at 347 (quoting *Diamond v. Bland,* 11 Cal.3d 331, 113 Cal.Rptr. 468, 521 P.2d 460 (1974) (Mosk, J., dissenting) (citation omitted)). The United States Supreme Court affirmed, ruling that a state is free to interpret its constitution to prohibit private infringements on constitutionally-protected expression, provided that it does not violate the fifth and fourteenth amendment rights of private property owners. 447 U.S. at 80–85, 100 S.Ct. at 2040–43.

Many other courts have since addressed the question whether their state constitutional guarantees of free expression apply to purely private infringements, with mixed results. For example, in *Alderwood Associates v. Washington Environmental Council,* 96 Wash.2d 230, 635 P.2d 108, 110 (1981), the owner of Alderwood Mall sued to enjoin a group of citizens from soliciting signatures for an initiative concerning the storage and transportation of radioactive waste. *Id.* The court described the mall as a regional shopping center with more than one million square feet of store area on 110 acres of land. *Id.* It had 6,000

---

6. Cal. Const. art. I, § 2(a) provides:

   Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

7. The court also noted that, in a given 30–day period, 685,000 of the 788,000 adults living in the metropolitan San Jose area would visit one of the 15 largest shopping centers in the area, whereas retail sales in the central business district had declined precipitously. *Id.* at 345, 347 n. 5.

parking spaces and the projected 1985 daily automobile use was 39,600. *Id.* A plurality of the Washington Supreme Court held that article I, section 5 of the Washington Constitution [8] does not require state action. *Id.* at 115–16. The court adopted a case-by-case approach balancing the competing speech and property interests, and concluded that requiring Alderwood Mall to tolerate peaceful signature-gathering would not deprive it of property or due process. *Id.* at 115–17. The court emphasized that the shopping center performs the traditional public function of a town center or community business block. *Id.* at 117.

Similarly, in *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980), *appeal dismissed*, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982), the New Jersey Supreme Court ruled that a non-student has a constitutional right to distribute political literature on the campus of Princeton University, a private institution. In balancing the competing interests of the university and the speaker, the court noted that the university was devoted to educational purposes and ran an open campus with certain grounds and walkways completely open to the public. *Id.* at 630–31.

Finally, in *Shad Alliance v. Smith Haven Mall*, 118 Misc.2d 841, 462 N.Y.S.2d 344 (N.Y.Sup.Ct.1983), a New York trial court ruled that article I, sections 8, 9 and 11 of the state constitution [9] entitled a coalition of anti-nuclear power groups to distribute leaflets at the main entrance to the Smith Haven Mall. The mall contained a total of 97 acres with over 125 retail, entertainment, and service businesses and spaces to park 7,000 cars. *Id.* at 345. The central rotunda was one of the heaviest pedestrian traffic areas in the county. *Id.* at 345–46.

Other courts have construed state guarantees of free speech more narrowly. For example, in *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.*, 512 Pa. 23, 515 A.2d 1331, 1335 (1986), the Pennsylvania Supreme Court concluded that the declaration of rights in the Pennsylvania Constitution [10] was intended to limit the power of the state rather than regulate private relationships. Thus, the court ruled that a shopping mall open to the

---

**8.** Article I, § 5 of the Alaska Constitution had its source in the constitutions of Washington and Idaho. *See* 2 Proceedings of the Alaska Constitutional Convention 1305–06 (Jan. 5, 1956). Wash. Const. art. I, § 5 provides:

> Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right.

**9.** N.Y. Const. art. I, § 8 provides:

> Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions of indictments for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact.

*Id.* § 9(1) provides in part:

> No law shall be passed abridging the rights of the people peaceably to assemble and to petition the government, or any department thereof. . . .

*Id.* § 11 provides:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

**10.** Pa. Const. art. I, § 7 provides:

> The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

public solely for commercial purposes is not a public forum. *Id.* at 1336.

The Michigan Supreme Court ruled that its constitutional guarantees apply only to action by the government and do not apply to purely private conduct.[11] *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337, 344 (1985). Instead, the reasonable regulation of private property in the public interest is a matter for the legislature. *Id.* at 357. *Accord Cologne v. Westfarms Associates*, 192 Conn. 48, 469 A.2d 1201 (1984); *see also State v. Felmet*, 302 N.C. 173, 273 S.E.2d 708, 712 (1981) (reaching the same result without analysis).

We are aware of no case requiring the individual proprietor of a small establishment to provide a forum for the expressive rights of her fellow citizens. To the contrary, several of the cases on which Tait relies emphasize that the property was not a "modest retail establishment." We do not believe that the framers intended article I, section 5 to extend a doctrine which began in the streets of a company town inside the doors of a privately owned tavern.

We hold that article I, section 5 of the Alaska Constitution does not apply to the proprietor of a small establishment such as the Crazy Horse. Absent such a constitutional limitation, the proprietor of a small establishment such as the Crazy Horse may validly refuse to serve anyone for any reason not prohibited by statute. *See, e.g.,* AS 18.80.230.[12] As a matter of law, the rationale in the shopping center and university cases does not overcome the private autonomy of a small proprietor in the conduct of its business. Given our conclusion, we leave to a more appropriate case our resolution of the question presented in the shopping center cases.

## VI. IS TAIT A PUBLIC INTEREST PLAINTIFF?

Johnson argues that the superior court awarded excessive attorney's fees because (1) Tait is not a public interest plaintiff and (2) the lawyer's time expended was excessive. Even though our decision requires the superior court to vacate the award of attorney's fees, we will address the public interest issue in the event that Johnson moves for an award of attorney's fees on remand.

The court may not award attorney's fees against an unsuccessful public interest litigant. *Hunsicker v. Thompson*, 717 P.2d 358, 359 n. 2 (Alaska 1986). Tait qualifies as a public interest litigant if (1) the case effectuates a strong public policy, (2) numerous people will benefit from the litigation, (3) only a private party could be expected to bring the action, and (4) Tait did not have sufficient economic incentive to bring the lawsuit. *Sisters of Providence v. Department of Health & Soc. Servs.*, 648 P.2d 970, 979–80 (Alaska 1982).

We conclude that Judge Katz did not abuse her discretion in concluding that this suit to enjoin the arguable infringement of the right of free expression is public interest litigation. Therefore, Johnson is not entitled to an award of attorney's fees against Tait.

The decision of the superior court is RE-VERSED and the case REMANDED with instructions to enter judgment for Johnson.

---

11.  Mich. Const. art. I, § 5 provides:

Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.

12.  AS 18.80.230(1) provides in part:

It is unlawful for the owner, lessee, manager, agent or employee of a public accommodation

(1) to refuse, withhold from or deny to a person any of its services, goods, facilities, advantages or privileges because of sex, physical or mental disability, marital status, changes in marital status, pregnancy, parenthood, race, religion, color or national origin.