Kristine M. FARDIG, Dorothy M. Bassett, and Diane M. Metcalf, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Carol I. DVORAK, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Nos. A–2900, A–2901.

Court of Appeals of Alaska.

Feb. 2, 1990.

---

**912**

Cheri C. Jacobus, Ross, Gingras, Bailey & Miner, P.C., Anchorage, for appellants.

John E. McConnaughy, III, Asst. Mun. Prosecutor, Jim Wolf, Mun. Prosecutor, and Richard D. Kibby, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., COATS, J., and FABE, Superior Court Judge.*

## OPINION

COATS, Judge.

Kristine M. Fardig, Dorothy M. Bassett, Diane M. Metcalf and Carol I. Dvorak (hereinafter "Fardig") pled no contest to trespass, Anchorage Municipal Code (AMC) 08.30.010(A), preserving the right to appeal the denial of their motions to dismiss. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm.

On June 10, 1988, Fardig was in the parking lot of the Alaska Women's Health Services' building distributing pro-life literature to patrons of the facility. Fardig's arrest resulted after the director of the facility, the clinic coordinator and the police requested Fardig to leave the premises and she declined to do so.

■ Fardig contends she should have been charged under AMC 09.36.240,[1] the parking lot ordinance, rather than AMC 08.30.010,[2] the general trespass ordinance.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Anchorage Municipal Code 09.36.240 provides:
   *Trespass in parking lots.* It is unlawful for any driver, passenger, pedestrian or other person to enter or remain within a public or private parking lot in violation of a clearly visible sign posted by the owner or operator of such lot, which sign sets forth rules of occupation of the said lot during specified times.

2. Anchorage Municipal Code 08.30.010 reads:

*Trespass—Posting of property—penalty.*
A. It is unlawful for any person, firm or corporation to commit a trespass upon either public or private property without consent of the owner of the property.
B. Without constituting any limitation upon the provisions of subsection A hereof, any of the following acts by any person, firm or corporation shall be deemed included among those that constitute trespasses in violation of the provisions of subsection A, and appropriate action may be taken hereunder at any time, or from time to time, to prevent or

In support of her contention, Fardig cites case law which provides that where both a general criminal provision and a more specific criminal provision punish the same conduct, the specific provision applies and the defendant may be charged only under that provision. *See, e.g., Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (where accused shot at federal officers who were trying to arrest him, statute which prescribed an enhanced sentence for a defendant's use of a deadly weapon in assaulting a federal officer applied rather than statute which prescribed an enhanced sentence for a defendant's use of a gun in committing a federal felony). In Fardig's view, she should have been charged under AMC 09.36.240 because the provision applies to parking lots and is therefore clearly the more specific of the two statutes.

Fardig's arguments are unfounded. In each of the cases cited by Fardig, the accused's conduct violated the language of both the general and the specific provisions in question.[3] On the other hand, the complaint specifies only that Fardig "failed to leave the premises of the Alaska Women's Resource Center (sic) after being verbally requested [to do so]." Fardig is not alleged to have violated any rules set forth in the sign posted on the building. In fact, Fardig concedes on appeal that her conduct did not violate the commands of the sign. For this reason, the cases upon which Fardig relies are simply inapposite. We can find no authority which requires that the municipality charge Fardig with trespass in a parking lot simply because the trespass took place there.

◼ Fardig next contends her conviction cannot stand because she was exercising her right to freedom of speech at the time of her arrest. Fardig adds that state action is involved because the parking lot is quasi-public property in that the police enforce handicap parking regulations and other ordinances in the lot, the clinic is subject to state and federal regulations, and the clinic accepts Medicare and Medicaid funds.

The first amendment generally does not guarantee freedom of speech against private infringement; instead, the amendment

punish any violation or violations of this section.

The aforesaid enumerated acts shall include:

1. an entry or remaining upon the premises, or any part thereof, of another, including any public property, in violation of a warning not to enter, remain or trespass upon such property contained in a notice posted or exhibited at the main entrance to the premises;

2. the pursuit of any course of conduct or action upon the land of another in violation of a notice posted or exhibited at the main entrance to the premises or at any point of approach or entry, or in violation of any notice, warning or protest given orally or in writing by any owner or occupant thereof;

3. a failure or refusal to depart from the premises of another, including publicly owned property, upon request to do so orally or in writing by any owner or occupant thereof;

4. an entry into or upon any vehicle, aircraft or watercraft made without the consent of the person having the right to the possession or control thereof, or a failure or refusal to leave any such vehicle, aircraft or watercraft after being requested to leave by the person having such right.

C. The manager or his designee is authorized to cause the posting of signs on or around municipally owned or municipally controlled property, buildings or other areas advising that such property, building or area is restricted as to public use or access.

D. The penalties provided for violation of the section are in addition to and not in lieu of any other penalty provided for in state law or municipal ordinance or any civil remedy available to the municipality. (Adapted from CAC 8.30.021).

3. *See, e.g., United States v. Bates,* 429 F.2d 557, 559 (9th Cir.1970) (where defendant's conviction resulted from his plan to fly a load of marijuana into the United States from Mexico, statute which prohibited conspiracy to unlawfully import marijuana applied rather than general statute which prohibited conspiracy to commit a crime); *Adams v. Culver,* 111 So.2d 665, 667 (Fla.1959) (where defendant showed pornographic pictures to a child, statute which precluded that very act applied rather than general provision which prohibited lewd and lascivious acts in the presence of a child); *State v. Danforth,* 97 Wash.2d 255, 643 P.2d 882, 883 (1982) (where accused walked away from a work release program, statute which prohibited willful failure to return to a work release program applied rather than general escape statute); *State v. Jessup,* 31 Wash.App. 304, 641 P.2d 1185, 1188–89 (1982) (defendant convicted of promoting prostitution in the second degree could not also be convicted of criminal conspiracy to promote prostitution).

protects only against abridgement by the federal or state government. In only one case has the United States Supreme Court carved out an exception to this general rule and concluded that an entity's characteristics made it sufficiently "public" in nature to trigger the application of the freedom of speech guarantee. In *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), Grace Marsh distributed religious literature, in contravention of a local ordinance, on the streets of a company town, Chickasaw, owned by the Gulf Shipbuilding Corporation. Marsh contended the ordinance violated the first amendment of the United States Constitution. The United States Supreme Court concluded that the private ownership interest of the corporation did not defeat the constitutional claim:

> We do not agree that the corporation's property interests settle the question. The State urges in effect that the corporation's right to control the inhabitants of Chickasaw is coextensive with the right of a homeowner to regulate the conduct of his guests. We cannot accept that contention. Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.

*Id.* at 505–06, 66 S.Ct. at 278 (footnote omitted). The court emphasized that the corporation "[did] not function differently from any other town" and that, as a result, the public had a strong interest in maintaining open and free communication channels. *Id.* at 507–08, 66 S.Ct. at 279.

Further attempts to trigger the application of the first amendment guarantee in the face of alleged quasi-public private infringement have been rejected by the United States Supreme Court. For example, in *Lloyd Corporation, Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the court held that the private owner of a 50–acre shopping center may enjoin political leafletting which is unrelated to the shopping center's operations. The

court stated "property [does not] lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there." 407 U.S. at 569, 92 S.Ct. at 2229. Before the owner of private property can be subject to the first amendment, the private property must "assume to some significant degree the functional attributes of public property devoted to public use." *Central Hardware Company v. National Labor Relations Board*, 407 U.S. 539, 546–47, 92 S.Ct. 2238, 2242–43, 33 L.Ed.2d 122 (1972) (private owner of 70,000 square foot hardware store permitted to enjoin solicitation on the store's parking lot); *cf. Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (privately owned restaurant under lease in a parking garage financed by public funds and owned by state subject to fourteenth amendment guarantee).

These authorities make it clear that the Alaska Women's Health Services Center is not subject to the application of the first amendment guarantee. The testimony at the evidentiary hearing established that Alaska Women's Health Services is a small, privately owned and operated health service commercial enterprise for profit. The facility is not even remotely similar to the company town in *Marsh*. Testimony at the hearing also revealed the center offers obstetrical and gynecological care such as the delivery of babies, infertility workshops, abortions, family planning and anything else dealing with women's reproductive health care. Such services do not fall into the category of "significant public attributes ... devoted to public use." The only evidence of state involvement appears to be the payment of bills through Medicaid. However, the testimony at the evidentiary hearing made it clear that only a quarter of the facility's patients pay in this manner; the remaining three-quarters of the facility's funding comes from patients' private

payments or insurance.[4]

■ Finally, Fardig contends even if this court concludes the parking lot is private property, this court should interpret the Alaska Constitution to prevent the owner of private property from infringing upon the right of free expression. Fardig notes the following language found in the Alaska Constitution imposes no state action requirement:

> Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.

Alaska Const. art. 1, § 5. Fardig also relies on *Johnson v. Tait,* 774 P.2d 185 (Alaska 1989), in which the Alaska Supreme Court held that the Alaska Constitution did not require a tavern owner to serve a motorcycle club member, who was wearing club colors on his jacket in violation of tavern policy. *Id.* at 190. In Fardig's view, the parking lot in question, located adjacent to a health facility which receives public funds, is far more "public" in nature than the small private tavern in *Johnson.*

Fardig's arguments are again unpersuasive. In *Johnson,* the Alaska Supreme Court noted that other courts were split on the issue of whether their constitutions guaranteed freedom of speech against private infringements. The court noted that those jurisdictions which determined that their constitutions did not require state action reached that determination from cases involving the following fact patterns: a 21–acre shopping center with 65 shops, 10 restaurants and a cinema, *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), *aff'd,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); the campus of Princeton University, *State v. Schmid,* 84 N.J. 535, 423 A.2d 615 (1980), *appeal dismissed,* 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982); a 97–acre mall with over 125 retail, entertainment and service businesses and 7,000 parking spaces, *Shad Alliance v. Smith Haven Mall,* 118 Misc.2d 841, 462 N.Y.S.2d 344 (N.Y.Sup.Ct.1983); and a shopping mall with more than one-million square feet of store area on 110 acres of land, *Alderwood Associates v. Washington Environmental Council,* 96 Wash.2d 230, 635 P.2d 108, 110 (1981). Again, the small medical facility at issue in the instant case is hardly comparable to any of these facilities. Language from *Johnson* applies with equal force here: "As a matter of law, the rationale in the shopping center and the university cases does not overcome the private autonomy of a small proprietor in the conduct of its business." 774 P.2d at 190.

Accordingly, Fardig was not charged under the wrong ordinance and Fardig's constitutional claims must fail because the health center's operation is not "public" in nature.

The conviction is AFFIRMED.

SINGLETON, J., not participating.

---

4. Fardig also contends AMC 08.30.010 and AMC 09.36.240 are overbroad. However, Fardig did not raise this issue below and thus the issue has not been preserved for appeal.