Kristine M. FARDIG, Dorothy M. Bassett, and Diane M. Metcalf, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Carol I. DVORAK, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Nos. A–2900, A–2901.

Court of Appeals of Alaska.

Dec. 14, 1990.

Cheri C. Jacobus, Ross, Gingras, Bailey & Miner, Anchorage, for appellants.

John E. McConnaughy, III, Asst. Mun. Prosecutor, Jim Wolf, Mun. Prosecutor, and Richard D. Kibby, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., COATS, J., and FABE, Superior Court Judge.*

OPINION ON REHEARING

COATS, Judge.

■ Kristine M. Fardig, Dorothy M. Bassett, Diane M. Metcalf, and Carol I. Dvorak (hereinafter "Fardig") pled no contest to trespass, Anchorage Municipal Code (AMC) 08.30.010(A), preserving the right to appeal the denial of their motions to dismiss. *Co-*

*oksey v. State*, 524 P.2d 1251 (Alaska 1974). We recently affirmed these convictions in *Fardig v. Anchorage*, 785 P.2d 911 (Alaska App.1990). In issuing our decision, we specifically declined to address the merits of Fardig's contention that AMC 08.30.010 is overbroad because Fardig had not raised this argument below. *Id.* at 915 n. 4. Fardig petitioned for rehearing, arguing that because this issue concerned whether AMC 08.30.010 was constitutionally overbroad, she was entitled to raise the issue for the first time on appeal. We have concluded that Fardig is correct, and grant the petition for rehearing. *Crutchfield v. State*, 627 P.2d 196 (Alaska 1980).[1]

On June 10, 1988, Fardig distributed anti-abortion literature in the parking lot of the Alaska Women's Health Services building. Her arrest arose after the director of the facility, the clinic coordinator and the police requested that she leave the premises but she declined to do so. The trespass ordinance at issue provides:

*Trespass—posting of property—penalty*

A. It is unlawful for any person, firm or corporation to commit a trespass upon either public or private property without consent of the owner of the property.

B. Without constituting any limitation upon the provisions of subsection A hereof, any of the following acts by any person, firm or corporation shall be deemed included among those that constitute trespasses in violation of the provisions of subsection A, and appropriate action may be taken hereunder at any time, or from time to time, to prevent or punish any violation or violations of this section.

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. In her initial appeal, Fardig also contended that the Municipality's Parking Lot Ordinance, AMC 09.36.240, is overbroad. We declined to address this question because Fardig had not raised the issue below. In her petition for rehearing, she requests that we address this issue. However, Fardig was not convicted of violating the parking lot ordinance, so the issue is not

properly before us. *See Colton v. Kentucky*, 407 U.S. 104, 111 n. 3, 92 S.Ct. 1953, 1958 n. 3, 32 L.Ed.2d 584 (1972) (appellant may attack on overbreadth grounds only those statutory subsections for which he was convicted); *Kirstel v. State*, 13 Md.App. 482, 284 A.2d 12, 15 (Spec. App.1971) (appellant entitled to a determination of the constitutionality of those provisions for which he was convicted).

The aforesaid enumerated acts shall include:

1. an entry or remaining upon the premises, or any part thereof, of another, including any public property, in violation of a warning not to enter, remain or trespass upon such property contained in a notice posted or exhibited at the main entrance to the premises;

2. the pursuit of any course of conduct or action upon the land of another in violation of a notice posted or exhibited at the main entrance to the premises or at any point of approach or entry, or in violation of any notice, warning or protest given orally or in writing by any owner or occupant thereof;

3. *a failure or refusal to depart from the premises of another, including publicly owned property, upon request to do so orally or in writing by any owner or occupant thereof;*

4. an entry into or upon any vehicle, aircraft or watercraft made without the consent of the person having the right to the possession or control thereof, or a failure or refusal to leave any such vehicle, aircraft or watercraft after being requested to leave by the person having such right.

C. The manager or his designee is authorized to cause the posting of signs on or around municipally owned or municipally controlled property, buildings or other areas advising that such property, building or areas is restricted as to public use or access.

D. The penalties provided for violation of this section are in addition to and not in lieu of any other penalty provided for in state law or municipal ordinance or any civil remedy available to the municipality. (Adapted from CAC 8.30.021).

AMC 08.30.010 (emphasis added).

■ A statute may violate the overbreadth doctrine when constitutionally protected first amendment freedoms, as well as conduct which the state can legitimately regulate, are included within the ambit of the statute. *Marks v. Anchorage,* 500 P.2d 644, 646 (Alaska 1972). Generally, a successful overbreadth challenge may be mounted where "the protected activity is a significant part of the law's target," L. Tribe, *American Constitutional Law* § 12–27 at 1022 (1988); a statute may not create a threat of criminal penalties which might unduly inhibit the exercise of basic rights such as freedom of speech, press, religion, and assembly. *Stock v. State,* 526 P.2d 3, 7 (Alaska 1974). We have previously adopted the following rationale for the overbreadth doctrine:

> These [first amendment] freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.... Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.

*Marks,* 500 P.2d at 647, quoting *N.A.A.C.P. v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

Fardig contends AMC 08.30.010(A) is overbroad because it restricts the exercise of her first amendment rights. Fardig argues that case law from other jurisdictions shows that in general, trespass ordinances which address solely private property have withstood overbreadth challenges while those which apply to public property have been struck down as invalid.[2] Fardig con-

---

**2.** Fardig cites to *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973) to support her contention that trespass ordinances which apply solely to private property have generally survived overbreadth challenges. In *Marley,* the defendants entered the premises of the Honeywell Corporation in Honolulu, Hawaii in order to protest the corporation's participation in the Indochina War. The court upheld the defendants' conviction for trespass under the following ordinance:

> Whoever, without right, enters or remains in or upon the dwellinghouse, buildings, or improved or cultivated lands of another or the land of another about or near any buildings used for dwelling purposes, after having been forbidden to do so by the person who has lawful control of such premises, either directly or by notice posted thereon ... shall be

tends Anchorage's trespass ordinance is flawed because it addresses both public and private property. Fardig relies on *Grody v. State*, 257 Ind. 651, 278 N.E.2d 280 (1972) to support this argument.

In *Grody*, the defendants were convicted of violating the following ordinance:

It shall be a misdemeanor for any person to refuse to leave the premises of any institution established for the purpose of the education of students enrolled therein when so requested, regardless of the reason, by the duly constituted officials of any such institution.

*Id.* 278 N.E.2d at 281. The Indiana Supreme Court concluded the statute was overbroad because it granted to school officials:

the power to order the cessation of *any* kind of activity whatsoever, by *any* person whatsoever and the official does not need to have any special reason for the order. The official's power extends to teachers, employees, students and visitors and is in no way confined to suppressing activities that are interfering with the orderly use of the premises. This statute empowers the official to order any person off the premises because he does not approve of his looks, his opinions, his behavior, no matter how peaceful, or *for no reason at all.* Since there are *no* limitations on the reason for such an order, the official can request a person to leave the premises solely because the person is engaging in expressive conduct even though that conduct may be clearly protected by the First Amendment.

*Id.* 278 N.E.2d at 282–83 [emphasis in original]. The court also determined that the statute, in effect, constituted a power of censorship and prior restraint of first amendment activities. *Id.* 278 N.E.2d at 283.

In *Grody*, the state argued that it had the power to regulate the use of public property just as private owners do. The state relied upon the U.S. Supreme Court decision of *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), in which student demonstrators entered jail grounds in order to protest racial segregation policies. The students were charged with "trespass with a malicious and mischievous intent" when they refused to leave the premises after a sheriff requested that they do so. *Adderley* at 40, 87 S.Ct. at 243.[3] The U.S. Supreme Court upheld the constitutionality of the trespass statute, finding in relevant part:

The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this "area chosen for the peaceful civil rights demonstration was not only 'reasonable' but also particularly appropriate...." Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected.... We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.

*Id.* at 47–48, 87 S.Ct. at 247.

The *Grody* court rejected the state's argument and distinguished *Adderley* in two ways. First, the court noted that the public property involved in *Adderley*, the jail premises, was not "normally used by the public for any purpose" and, consequently, was subject to "different rules regarding

---

fined not more than $250, or imprisoned not more than three months, or both:....
*Id.* 509 P.2d 1099–1100 n. 1.

**3.** The trespass statute at issue in *Adderley* provided:

Every trespass upon property of another, committed with a malicious and mischievous intent, the punishment of which is not specially provided for, shall be punished by imprisonment not exceeding three months, or by fine not exceeding one hundred dollars.
*Id.* at 40 n. 1, 87 S.Ct. at 243 n. 1.

its use" for first amendment activities than were areas more commonly associated with public use such as, for example, parks or public streets. *Grody,* 278 N.E.2d at 284. Second, in the court's view, the statute at issue in *Adderley* used specific and narrowly drawn language so as to eliminate any vagueness problems. *Id.* 278 N.E.2d at 285.

In *Perry Education v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the U.S. Supreme Court made it clear that "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Id.* at 44, 103 S.Ct. at 954. According to the Court:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks.... In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. (Citations omitted). The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. (Citations omitted).
>
> A second category consists of public property which the State has opened for use by the public as a place for expressive activity ... university meeting facilities ... school board meeting.... [Here] a State ... is bound by the same standards as apply in a traditional public forum....
>
> Public property which is not by tradition or designation a forum for public communication is governed by different standards.... In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.... [t]he state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. (Citations omitted).

*Id.* at 45–46, 103 S.Ct. at 954–55.

Under *Grody* and *Perry,* AMC 08.-30.010(A)'s inclusion of public property within its coverage is impermissible because "[t]he exercise of First Amendment rights is inevitably going to be an integral part of [the public] environment." *Grody,* 278 N.E.2d at 284. Anchorage Municipal Code 08.30.010(A), like the statute at issue in *Grody,* impermissibly allows individuals to be ordered off of public premises solely because the persons express opinions of which those in charge of the property disapprove. Our review of case law from other jurisdictions reveals that a statute which addresses public property will be upheld only where the statute defines with specificity the reason for the prohibition of entering or remaining on the premises.[4] It appears, based on a review of these statutes, that AMC 08.30.010(A)'s flaw lies in the fact that it applies to public property,

---

4. *See, e.g., Dunkel v. Elkins,* 325 F.Supp. 1235, 1241 (D.Md.1971) (court rejected overbreadth challenge to statute which made it a misdemeanor for persons "who have no lawful business to pursue at the institution," or "who are acting in a manner disruptive or disturbing to the normal educational functions of the institution" to refuse the request of an authorized employee to leave the premises.); *State v. Sullivan,* 189 Neb. 465, 203 N.W.2d 169, 170 (1973) (court rejected overbreadth challenge for per-son's failure to leave educational institution where person commits or threatens to commit act which "unreasonably interferes with or obstructs the lawful missions, processes, functions or discipline of such institution."); *People v. Witzkowski,* 53 Ill.2d 216, 290 N.E.2d 236, 238 (1972) (court rejected overbreadth challenge against statute which prohibited refusing to leave public institution of higher education property "through force or violence, actual or threatened.").

and it does not set forth with specificity under what circumstances an individual may be ordered to leave the public grounds in question. We therefore conclude that AMC 08.30.010(A) is overbroad insofar as it applies to public property.

In concluding that AMC 08.30.010(A)'s references to the public domain are overbroad, we recognize, however:

> [T]hat the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected.
>
> . . . .
>
> [A] court should not extend its invalidation of a statute further than necessary to dispose of the case before it.
>
> . . . .
>
> [P]artial, rather than facial, invalidation is the required course.

*Brocket v. Spokane Arcades, Inc.*, 472 U.S. 491, 502–04, 105 S.Ct. 2794, 2801–02, 86 L.Ed.2d 394 (1985) (citations omitted). A leading constitutional scholar, Lawrence Tribe, is in agreement with this approach. Tribe states that an overbreadth challenge may be raised only where "there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications." L. Tribe, *American Constitutional Law* § 12–27 at 1022 (1988). We further note that the Anchorage Municipal Code contains a severability clause. Anchorage Municipal Code 01.05.040 provides:

> The sections, paragraphs, sentences, clauses, and phrases of this code are severable, and if any phrase, clause, sentence, paragraph or section of this code is declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining

phrases, clauses, sentences, paragraphs and sections of this code.

*See also* AS 01.10.030.[5]

Applying these principles in the instant case, we invalidate only that portion of AMC 08.30.010 which applies to public property. In reaching this conclusion, we are convinced that the portion of the ordinance which addresses private property will retain its effectiveness, and the identified overbreadth concerning public property will not in any way taint the applications of the ordinance concerning private property. *Accord Seattle v. Davis*, 32 Wash.App. 379, 647 P.2d 536 (1982) (invalidated portion of trespass statute addressing public property severable from portion of trespass statute addressing private property).

Accordingly, because her conduct involved private property, Fardig's conviction is AFFIRMED.

---

5. Alaska Statute 01.10.030 provides:
 Any law heretofore enacted by the Alaska Legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any pro-

vision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."