[No. E006081. Fourth Dist. Div. Two. June 23, 1989.]

JUDLO, INC., Plaintiff and Respondent, v.
THE VONS COMPANIES, INC., Defendant and Appellant.

**COUNSEL**

Munger, Tolles & Olson, Allen M. Katz and Gregory D. Phillips for Defendant and Appellant.

Alfred J. Gergely for Plaintiff and Respondent.

## OPINION

**DABNEY, J.**—The Vons Companies, Inc. (Vons) appeals from an order granting a preliminary injunction in favor of respondent Judlo, Inc. (Judlo). The preliminary injunction requires Vons to permit Judlo to place a newsrack at Vons's grocery store in Rancho Mirage. Vons contends that the injunction constitutes a "taking" in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

### FACTUAL AND PROCEDURAL BACKGROUND

Vons owns and operates a chain of grocery stores throughout Southern California. Vons leases space at the Las Palmas shopping center for its grocery store in Rancho Mirage. Vons opens its stores to the general public daily during regular business hours. The Las Palmas shopping center contains about 20 stores and restaurants which open directly onto parking areas.

Judlo publishes the Desert Weekly, which has a circulation of 30,000, every Thursday. Judlo distributes the Desert Weekly free of charge from newsracks in front of stores throughout the Coachella Valley. In 1980, the manager of Vons's Rancho Mirage store permitted Judlo to place a newsrack inside the store. No other newsracks were placed inside the store.

In March 1988, about 18 newsracks were located directly in front of the Rancho Mirage store between the storefront and the parking area. Neither Judlo nor any of the other newsrack owners ever paid Vons for the use of the space on which the newsracks were placed. Vons's management determined that about 12 to 20 newsracks were located in front of each of Vons's stores. Vons's management believed that it was unsightly to have so many newsracks, and in April 1988 told local store managers to limit newsracks to three or four per site. Vons did not direct this decision at any particular publication. The local store managers were told to select which newsracks could remain, based on their knowledge of the needs and reading habits of their customers.

The manager of the Rancho Mirage store decided to allow newsracks for the Los Angeles Times, the Los Angeles Herald Examiner, the Riverside Press Enterprise, and the Desert Sun to remain in front of the store. All of these newspapers carry advertising for Vons. The manager requested all other publishers, including Judlo, to remove their newsracks. Undisputed evidence showed that other locations were available for newsracks in the Las Palmas shopping center; many publishers moved their newsracks to a site immediately adjacent to the Vons grocery store.

Judlo filed a complaint for preliminary and permanent injunctions and damages against Vons. Judlo claimed that the California Constitution prohibits Vons from limiting the number of newsracks in front of its store. The trial court found that Vons has the right to require removal of all newsracks or, for aesthetic reasons, to allow only a limited number. However, if Vons allows any newsracks to remain on its property, it must use a "blind draw" or other neutral method to select those newsracks. The trial court entered a preliminary injunction which prohibits Vons from removing Judlo's newsrack from its property until trial or until the court approves a nondiscriminatory plan for selecting which newsracks may remain.

## DISCUSSION

■ *Standard of Review.* The trial court may order a preliminary injunction if the plaintiff shows that the status quo should be maintained pending a trial of the merits. (*Cox Cable of San Diego, Inc.* v. *Bookspan* (1987) 195 Cal.App.3d 22, 25 [240 Cal.Rptr. 407].) To issue a preliminary injunction, the trial court must evaluate two interrelated factors. First, the court must consider whether the plaintiff is likely to prevail on the merits. Second, the court must weigh the interim harm to the plaintiff if the injunction is denied against the harm to the defendant if the injunction is issued. (*Ibid.*) On appeal, we reverse only if the trial court abused its discretion in resolving these issues. (*Ibid.*)

*Protection of Freedom of Speech Under the California Constitution.* ■ Judlo argues that Vons has dedicated space for public use at its privately owned store, and thus created a quasi-public forum which Vons invites and encourages the public to use for commercial purposes and for exercise of free speech rights under the First Amendment and the California Constitution. (See *Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74, 81 [64 L.Ed.2d 741, 752, 100 S.Ct. 2035]; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341].) Under these circumstances, Judlo asserts, Vons may not discriminatorily exclude the Desert Weekly. (See *City of Lakewood* v. *Plain Dealer Publishing Co.* (1988) 486 U.S. 750 [100 L.Ed.2d 771, 108 S.Ct. 2138]; *Laguna Publishing Co.* v. *Golden Rain Foundation* (1982) 131 Cal.App.3d 816 [182 Cal.Rptr. 813].)

■ Article I, section 2, subdivision (a) of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." California courts have construed this provision to be more definitive and inclusive than the First Amendment. (*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119

Cal.Rptr. 468, 532 P.2d 116].) ■ The United States Constitution does not limit a state's authority to adopt more expansive individual liberties in its own constitution than those conferred by the United States Constitution. (*Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219].) ■ A state may reasonably restrict use of private property unless the restrictions contravene a federal constitutional provision. (*Pruneyard, supra,* 447 U.S. at p. 81 [64 L.Ed.2d at p. 752].)

In *Robins, supra,* 23 Cal.3d 899, the California Supreme Court held that a state may, without violating property rights under the Fifth Amendment, require shopping center owners to permit people to solicit signatures within shopping centers for petitions to the government. ■ The court explained, " 'We do not minimize the importance of the constitutional guarantees attaching to private ownership of property; but as long as 50 years ago it was already " 'thoroughly established in this country that the rights preserved to the individual by these constitutional provisions are held in subordination to the rights of society. Although one owns property, he may not do with it as he pleases any more than he may act in accordance with his personal desires. As the interest of society justifies restraints upon individual conduct, so, also, does it justify restraints upon the use to which property may be devoted. It was not intended by these constitutional provisions to so far protect the individual in the use of his property as to enable him to use it to the detriment of society. By thus protecting individual rights, society did not part with the power to protect itself or to promote its general well-being. Where the interest of the individual conflicts with the interest of society, such individual interest is subordinated to the general welfare.' " ' " (*Id.,* at p. 906.)

*Taking Without Just Compensation*. In *Pruneyard, supra,* 447 U.S. 74, the United States Supreme Court affirmed the *Robins* decision. ■ However, the court cautioned that a state, in exercising its police power, may not adopt restrictions on private property which amount to a taking without just compensation or contravene another federal constitutional provision. (*Id.,* at p. 81 [64 L.Ed.2d at p. 752].) ■ Vons contends that the *Robins* and *Pruneyard* decisions do not apply here because the injunction which requires Vons to permit Judlo to place its newsrack in front of Vons's Rancho Mirage store constitutes a "taking" in violation of the Fifth and Fourteenth Amendments.

■ In *Loretto* v. *Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419 [73 L.Ed.2d 868, 102 S.Ct. 3164], the Supreme Court established a bright line test for determining when an impermissible "taking" of property has occurred: any permanent, physical occupation of an owner's property, authorized by the government, constitutes a "taking" of property for which

just compensation is required under the Fifth and Fourteenth Amendments, without regard to the public interests the occupation may serve or the minimal nature of the economic impact on the owner. (*Id.,* at pp. 421, 426, 434-435 [73 L.Ed.2d at pp. 873, 876, 881-882].) Thus, the court invalidated a New York law which required a landlord to permit a cable television company to install cable facilities on his property. (*Id.,* at pp. 421, 441 [73 L.Ed.2d at pp. 873, 886].) Although the cable equipment occupied only one and one-half cubic feet, the court noted that constitutional protection for private property rights does not depend on the size of the area permanently occupied. (*Id.,* at pp. 436-438 & fn. 16 [73 L.Ed.2d at pp. 882-884].)

The *Loretto* court distinguished *Pruneyard* as an example of an allowable temporary intrusion: "Another recent case underscores the constitutional distinction between a permanent occupation and a temporary physical invasion. In [*Pruneyard*], the court upheld a state constitutional requirement that shopping center owners permit individuals to exercise free speech and petition rights on their property, to which they had already invited the general public. . . . Since the invasion [in *Pruneyard*] was temporary and limited in nature, and since the owner had not exhibited an interest in excluding all persons from his property, 'the fact that [the solicitors] may have "physically invaded" [the owners'] property cannot be viewed as determinative.' [Citation.]" (458 U.S. at p. 434 [73 L.Ed.2d at p. 881].)

In *Cox Cable, supra,* 195 Cal.App.3d 22, the court addressed the implications of *Loretto* in a case substantially similar to this case. Cox Cable's predecessor had contracted with the owner of an apartment complex to provide cable television services. The owner later decided to install a different cable system, entered into an exclusive contract with a competitor of Cox Cable, and disconnected Cox Cable's equipment. Cox Cable asserted that the owner could not constitutionally refuse to allow Cox Cable to connect subscribers in the apartment complex. However, the court ruled that an injunction requiring the property owner to allow Cox Cable to reattach its equipment would result in an unconstitutional taking of private property. As in *Loretto,* the court emphasized the permanent nature of the intrusion: "Unlike the transitory trespass involved in the delivery (or right of access) of print media, Cox's asserted right of access collides with the Fifth Amendment's prohibition against taking private property without just compensation." (*Id.,* at p. 26.) The *Cox* court, like the *Loretto* court, distinguished *Pruneyard* on the ground that it permitted "at most, transitory trespasses" by leafletters and speakers, not "the sort of permanent physical occupation sought here." (*Id.,* at p. 29.)

Under *Loretto,* the distinction between temporary and permanent intrusions on property is crucial for constitutional purposes. (*Loretto, supra,* 458

U.S. at p. 428 [73 L.Ed.2d at p. 877].) An injunction which requires Vons to permit Judlo to place a newsrack on Vons's property is an unconstitutional taking of private property without compensation. (*Cox Cable, supra,* 195 Cal.App.3d at p. 27, fn. 3.)

*Property Owner's Exercise of Discretion.* The trial court held that if Vons chose to allow a few newsracks to remain, it must employ a "blind draw" or other "nondiscriminatory" process to select those newsracks; Vons could not permit its local store manager to determine, on the basis of customer needs and reading habits, which newsracks could remain. Judlo argues that Vons unconstitutionally discriminated among publishers when it gave its local managers broad discretion to determine which publications could remain. Judlo relies primarily on *Lakewood, supra,* 486 U.S. 750 [100 L.Ed.2d 771, 108 S.Ct. 2138] and *Laguna Publishing Co., supra,* 131 Cal.App.3d 816.

In *Lakewood,* a newspaper publisher challenged, on First Amendment grounds, the facial constitutionality of a local ordinance which authorized the mayor to grant or deny applications for annual permits to publishers to place their newsracks on public property. The United States Supreme Court held that the ordinance was unconstitutional insofar as it gave the mayor "unfettered discretion to deny a permit application and unbounded authority to condition the permit on additional terms he deems 'necessary and reasonable.'" (*Lakewood, supra,* 486 U.S. at p. 772 [100 L.Ed.2d at p. 792, 108 S.Ct. at p. 2152]; accord, *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 303 [138 Cal.Rptr. 53, 562 P.2d 1302].)

In *Laguna Publishing Co., supra,* 131 Cal.App.3d 816, Golden Rain, a corporation which owned the common areas of Leisure World, a private residential community, prohibited Laguna Publishing Co. (Laguna) from distributing by private carrier its give-away newspaper unsolicited within Leisure World. This court held that Golden Rain could not discriminate against Laguna's rights of free speech and free press by excluding Laguna from Leisure World after Golden Rain had chosen to permit the unsolicited delivery of another newspaper to the residents of Leisure World. (*Id.,* at pp. 843-844.) The court concluded, ". . . the right of any and all to enter this private, gated community to exercise [state constitutional rights of free speech and free press] must be exactly measured by the right accorded to one, both as to the nature of the activity of that one as well as to the conditions of his admission." (*Id.,* at p. 845.)

 Vons asserts that its grocery store is not the functional equivalent of a municipality, and its decision to allow a few newsracks in front of its store does not create a public forum. Thus, both *Lakewood* and *Laguna* are

distinguishable. We agree. First, in neither case did the court require a private party to allow another to permanently occupy property. *Lakewood* dealt solely with the constitutional restrictions on licensing of speech activities by *public* entities. ■ It is a commonplace that the Constitution guarantees free speech only against abridgement by government, federal or state. (See *Columbia Broadcasting* v. *Democratic Nat. Comm.* (1973) 412 U.S. 94, 114-119 [36 L.Ed.2d 772, 790-793, 93 S.Ct. 2080].) As the *Lakewood* court noted, "[t]he danger giving rise to the First Amendment inquiry is that the *government* is silencing or restraining a channel of speech." (*Lakewood, supra,* 486 U.S. at p. 763 [100 L.Ed.2d at p. 787, 108 S.Ct. at p. 2147], italics added.)

In *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276], the court held that under some circumstances private property may, at least for First Amendment purposes, be treated as though it were publicly held, i.e., where the private property in a shopping center or company town is the functional equivalent of a business district. The court later explained "[W]here private interests were substituting for and performing the customary functions of government, First Amendment freedoms could not be denied where exercised in the customary manner on the town's sidewalks and streets. Indeed, as title to the entire town was held privately, there were no publicly owned streets, sidewalks, or parks where such rights could be exercised." (*Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551, 562 [33 L.Ed.2d 131, 92 S.Ct. 2219].) Thus, where "Leisure World . . . had about 20,000 residents, its own system of roads and streets, its own security force, its own parks, its own recreation facilities, and a hybrid form of self-government which dealt with matters of internal maintenance, security and operation of the 8 square miles of the project" (*Laguna, supra,* 31 Cal.App.3d at p. 843, fn. 10), the *Laguna* court justifiably concluded that the corporation could not discriminatorily exclude one newspaper publisher from distributing its newspaper when the corporation had permitted another to do so. However, the *Laguna* court allowed only a transitory trespass, not a permanent physical occupation.

■ In *Delaware, L. & W. R. Co.* v. *Town of Morristown* (1928) 276 U.S. 182 [72 L.Ed. 523, 48 S.Ct. 276, 56 A.L.R. 756], the United States Supreme Court established that an owner of property may decide whom he may allow to occupy or use his property. The court held that a local ordinance which required a railroad to establish a public taxi stand on the railroad's property constituted a taking without just compensation. The court further held that simply because the railroad had granted one taxi company a contractual privilege to use its property, the railroad had no duty to permit other taxicab men to do so. The court explained, "The enforcement of the ordinance here assailed would operate to deprive peti-

tioner of the use of the land in question and hand it over to be used as a public hack stand by the individual defendants and others. As to them, and so far as concerns its use as a public hack stand, the driveway was petitioner's private property and could not be so appropriated in whole or in part except upon the payment of compensation. [¶] Under the guise of regulation, the town cannot require any part of the driveway to be used in a service that petitioner is under no duty to furnish." (*Id.*, at pp. 194-195 [72 L.Ed.2d at p. 528].)

Likewise, in *Cox Cable,* the court held that the property owner could exercise discretion as to what permanent fixtures remain on its property, even in the face of a First Amendment challenge. The court ruled that protections for free speech extend only in "limited circumstances" to private individuals or private property, and then only when the private property is the "functional equivalent of a municipality or a public forum." (*Cox Cable, supra,* 195 Cal.App.3d at p. 29.) *Morristown* and *Cox* make it clear that the "discrimination" issue cannot be considered separately from the "taking" issue. Vons had no duty to provide its property for Judlo to use in carrying out Judlo's business. Even if Vons may have permitted other publishers to place their newsracks on its property, it was not required to permit Judlo to do so. (*Morristown, supra,* 276 U.S. 182; *Cox, supra.*) We conclude that the injunction which requires Vons to permit Judlo to place its newsrack on Vons's property is unconstitutional.

### DISPOSITION

The order granting a preliminary injunction is reversed.

Campbell, P. J., and Hollenhorst, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 6, 1989.