OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 89-1201 |
| of | : | |
| | : | AUGUST 7, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE ELIHU M. HARRIS, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May the trespass provisions of Penal Code section 602, subdivision (n) be constitutionally applied to a person picketing or distributing leaflets on the privately owned parking lot of a small medical clinic providing family planning services including abortions, if signs are posted stating that use of the lot is restricted to patients and staff and the person refuses to leave at the request of the clinic owner?

CONCLUSION

The trespass provisions of Penal Code section 602, subdivision (n) may be constitutionally applied to a person picketing or distributing leaflets on the privately owned parking lot of a small medical clinic providing family planning services including abortions, if signs are posted stating that use of the lot is restricted to patients and staff and the person refuses to leave at the request of the clinic owner.

ANALYSIS

We are informed that a Planned Parenthood clinic has a 40-space parking lot posted with signs stating that use of the lot is restricted to patients and staff. Persons opposed to the performance of abortions at the clinic seek to enter upon the parking lot to picket and distribute leaflets in support of their point of view.

The question presented for analysis is whether the trespass provisions of Penal Code section 602, subdivision (n) may be constitutionally applied to a person picketing or leafleting on the private parking lot of a small medical clinic (an unattached two-story building), if signs are posted limiting use of the lot to patients and staff and the person refuses to leave after being requested to do so by the clinic owner. We conclude that the constitutionally protected right of speech would not bar conviction for trespass under these circumstances.

Penal Code section 602[1] states in part:

". . . every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:

". . . . . . . . . . . . . . . . . . . . . . .

"(n) Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer . . . or (2) the owner, the owner's agent, or the person in lawful possession. . . . this subdivision shall not apply to persons on the premises who are engaging in activities protected by the California or United States Constitution. . . ."[2]

We consider first the application of the First Amendment of the United States Constitution to the facts presented in the question. It provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . ." While this applies only to acts of Congress, it is settled that a state law which abridges freedom of speech violates the due process clause of the Fourteenth Amendment. (*Near* v. *Minnesota* (1931) 283 U.S. 697.) The first case to hold that First Amendment rights could be exercised on private property over the objections of the owner was *Marsh* v. *Alabama* (1946) 326 U.S. 501 in which the court held that the First Amendment protected the distribution of religious literature on the sidewalks of the business block of a company owned town used by the residents as their regular shopping center. In *Amalgamated Food Emp. Union* v. *Logan Valley Plaza* (1968) 391 U.S. 308 the court extended the *Marsh* rationale to the modern shopping center stating (at pp. 319-320):

"All we decide here is that because the shopping center serves as the community business block `and is freely accessible and open to the people in the area and those passing through,' [citing *Marsh*], the State may not delegate [to private owners] the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put.

"We do not hold that respondents, and at their behest the State, are without power to make reasonable regulations governing the exercise of First Amendment rights on their property. Certainly their rights to make such regulations are at the

---

[1]All references hereafter to the Penal Code are by section number only.

[2]Because a statute may not be applied in an unconstitutional manner (see, e.g., *In re Cox*, 3 Cal.3d 205, 221), the "exception" language in subdivision (n) of section 602 merely codifies existing constitutional law. Whether persons are "engaging in activities protected by the California or United States Constitution" depends upon the particular circumstances involved and not whether the activities might be protected in other unrelated circumstances. "Even protected speech is not equally permissible in all places and at all times." (*Cornelius* v. *NAACP Legal Defense & Ed. Fund* (1985) 473 U.S. 788, 799.) Any other construction of this statutory exclusion provision would render subdivision (n) virtually meaningless. Nothing in the legislative history of the amendment that added this provision (Stats. 1988, ch. 1024, §1) suggests such an ineffective and unwarranted result. (See also *In re Catalano* (1981) 29 Cal.3d 1, 13-14; *Sears, Roebuck & Co.* v. *San Diego* (1979) 25 Cal.3d 317, 331, fn. 9.)

very least co-extensive with the powers possessed by States and municipalities, and recognized in many opinions of this Court, to control the use of public property. Thus where property is not ordinarily open to the public, this Court has held that access to it for the purpose of exercising First Amendment rights may be denied altogether."

However, in 1972 the U.S. Supreme Court began limiting the application of First Amendment rights to private property. In *Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 the high court rejected the reasoning of *Logan Valley*, holding that leafleting on shopping center property having no relation to any purpose of the center was not protected by the First Amendment. A companion case, *Central Hardware Co.* v. *NLRB* (1972) 407 U.S. 539, held that a union had no constitutional right to picket in the employer's parking lot. Finally in *Hudgens* v. *NLRB* (1976) 424 U.S. 507, 518 the Court expressly overruled *Logan Valley*, holding that the First Amendment does not protect picketing on shopping center property.

While the United States Supreme Court has not addressed the application of the freedom of speech clause in the First Amendment to the picketing of abortion clinics, other courts have. A number of these cases involve the arrest of picketers of abortion clinics under state statutes or local ordinances proscribing trespass or disorderly conduct. In each of the five cases we have found the courts have rejected the argument that the arrest of a person for picketing upon the private property of the abortion clinic violated that person's rights under the First and Fourteenth Amendments. (*Hoffart* v. *Texas* (Texas Ct. of App., 1985) 686 S.W.2d 259, 262 [the private grounds around a private abortion clinic are not a public forum for First Amendment purposes.]; *People* v. *Maher* (Crim. Ct., City of N.Y., 1987) 520 N.Y.S.2d 309, 314 [arrest for disorderly conduct for refusing to stay behind police barrier in front of entrance to abortion clinic did not violate First Amendment.] *Radich* v. *Goode* (1989, 3d Cir.) 886 F.2d 1391, 1398 [parking lot of an abortion clinic had not lost its private character merely because the public is generally invited to use it for designated purposes and would not be treated as public property for First Amendment purposes.] *Fardig* v. *Anchorage* (1990, Alaska Ct. of Appeals) 785 P.2d 911, 914 [parking lot of women's clinic where abortions were performed did not have "significant public attributes . . . devoted to public use" to make it a public forum and arrest of protester for refusing to leave did not violate the First Amendment]).

Other cases have authorized injunctions against protesters trespassing on abortion clinic property in appropriate circumstances. See *Brown* v. *Davis* (N.J. Superior Ct., 1984) 495 A.2d 900; *Kugler* v. *Ryan* (Mo. App., 1984) 682 S.W.2d 47; *Bering* v. *Share* (Wash., 1986) 721 P.2d 918; *Crozer Chester Medical Center* v. *May* (Pa. Super., 1986) 506 A.2d 1377; *Northeast Women's Center* v. *McMonagle* (E.D. Pa., 1987) 665 F.Supp. 1147; *O.B.G.Y.N. Associations* v. *Birthright of Brooklyn and Queens, Inc.* (N.Y. App., 1978) 407 N.Y.S.2d 903; *N.Y. State N.O.W.* v. *Terry* (2d Cir., 1989) 886 F.2d 1339; compare: *Mississippi Women's Medical Clinic* v. *McMillan* (5th Cir., 1989) 866 F.2d 788; *Medlin* v. *Palmer* (5th Cir., 1989) 874 F.2d 1085.

We conclude that application of Penal Code section 602, subdivision (n) to a person picketing or distributing leaflets on the parking lot of a small medical clinic providing family planning services including abortions is not prohibited by the First and Fourteenth Amendments to the United States Constitution.

We turn next to the California Constitution, and specifically to article 1, section 2(a) which provides:

"Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

In *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 the California Supreme Court held that the California Constitution protected the right of students to circulate petitions and gather signatures in support of their opposition to a United Nations resolution against Zionism in the mall of a large shopping center. On appeal the United States Supreme Court affirmed, holding that the United States Constitution did not prohibit a state from according greater free speech rights on private property than was accorded by the First and Fourteenth Amendments. (*Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74.) We have found no reported California case which has applied article 1, section 2(a) of the California Constitution to protesters on the private property of an abortion clinic. We must therefore look to California cases in analogous situations and cases in other jurisdictions for guidance in these uncharted waters.

When the California Supreme Court in *Robins* v. *Pruneyard Shopping Center*, *supra*, held that the state's Constitution protects speech and petitioning in a privately owned shopping center it added (at p. 910):

"By no means do we imply that those who wish to disseminate ideas have free rein. We noted above Chief Justice Traynor's endorsement of time, place, and manner rules. (*In re Hoffman*, *supra*, 67 Cal.2d at pp. 852-853.) Further, as Justice Mosk stated in *Diamond II*, `It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations (see *Diamond* [I] at p. 665) would not markedly dilute defendant's property rights." 11 Cal.3d at p., 345 (dis. opn. of Mosk, J.).)"

The "modest retail establishment" language would suggest that the *Robins* court would not extend California constitutional free speech rights to the private property of a modest retail establishment. A small medical clinic would seem to have more in common with a small retail establishment than a large shopping mall. However, the court in the *Robins* case also cited its prior free speech cases including *In re Lane* (1969) 71 Cal.2d 872 and stated:

"The fact that those opinions cited federal law that subsequently took a divergent course does not diminish their usefulness as precedent. . . . The duty of this court is to help determine what `liberty of speech' means in California. Federal principles are relevant but not conclusive so long as federal rights are protected."

In *In re Lane* (1969) 71 Cal.2d 872 Lane was convicted of violating an ordinance prohibiting one from remaining on another's property after being notified by the owner to leave. The arrest occurred on the privately owned sidewalk fronting the Calico Market, a grocery store individually owned and operated by one Stewart. The sidewalk was ten feet wide extending across the front of the store providing access from the store's parking area through two doorways in the store front. Lane was a union officer who was engaged in distributing handbills to customers urging them not to patronize the market because it advertised in a newspaper engaged in labor union disputes. Relying

principally upon the *Logan Valley* case, the court granted Lane's habeas petition and discharged him from custody stating (on p. 878):

> ". . . when a business establishment invites the public generally to patronize its store and in doing so to traverse a sidewalk opened for access by the public the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment. In utilizing the sidewalk for such purposes those seeking to exercise such rights may not do so in a manner to obstruct or unreasonably interfere with free ingress or egress to or from the premises."

It is not clear what the *Robins* court meant when it said that the usefulness of *Lane* as precedent was not diminished by the overruling of the *Logan Valley* case. It might be argued that it suggests that the rights announced in *Lane* would survive in California as part of the freedom of speech guaranteed by article 1, section 2(a) of the California Constitution. We reject this argument because it flies in the face of the express language in the *Robins* opinion that it does not apply to "the proprietor of a modest retail establishment."

California cases subsequent to *Robins* add little to help resolve the issue of the application of article 1, section 2(a) to protestors on private property surrounding an abortion clinic. In *Sears, Roebuck & Co.* v. *San Diego County District Council of Carpenters* (1979) 25 Cal.3d 317 the court upheld the right of the union to picket upon the sidewalks near the entrance to the Sears store but based its decision on a statute (Code of Civil Procedure section 527.3), stating in footnote 5 that "we express no opinion on whether the California Constitution protects the picketing here at issue." In the *Sears* case the court made the following observation (at pp. 326-327) about the *Lane* case:

> "*In re Lane* (1969) 71 Cal.2d 872 (*Lane*), involved a grocery store situated within a privately owned parking area - a factual setting comparable to the present case. Petitioner Lane distributed handbills on the private sidewalk outside the entrance to the store. He was arrested and convicted of violating city ordinances that prohibited remaining on another's property after being notified by the owner to leave and of distributing handbills on private property without the owner's consent. Relying both on federal free speech guarantees as set out in the *Logan Valley* case [citation] and state labor policy as established in *Schwartz-Torrance*, [*Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766], we ordered petitioner's release. In language fully applicable to the instant case, we explained that `If we were to hold the particular sidewalk area to be `off limits' for the exercise of First Amendment rights in effect we would be saying that by erecting a `cordon sanitaire' around its store, [the store] has succeeded in immunizing itself from on-the-spot public criticism.' (71 Cal.2d 872, 876.)"

The *Sears* court characterization of *In re Lane* as relying on *Logan Valley* "and state labor policy" suggests that the court may limit *Lane's* value as precedent to labor cases. This suggestion is strengthened somewhat by the court's summary (at p. 332), stating that "the sidewalk outside a retail store has become the traditional and accepted place where unions may, by peaceful picketing, present to the public their views respecting a labor dispute with that store."

*In re Catalano* (1981) 29 Cal.3d 1 was another labor case in which the court held lawful union picketing at the jobsite did not violate criminal trespass statutes, stating that the 1978 amendment to Penal Code section 602(n) excepting union activities from that section merely

codified existing law. There was no reference to article 1, section 2(a) of the California Constitution in the opinion.

*U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157 involved the right of those opposing nuclear weapons research to distribute pamphlets in the Visitors Center of the Lawrence Livermore Laboratory and to use its auditorium for the presentation of a program by the Project. Since the property was owned by the University of California, the application of free speech rights to private property was not involved. The issue was the extent to which free speech rights could be exercised on public property dedicated to particular uses. The Project asserted that the Visitors Center and the auditorium had become a "public forum" for the exercise of free speech rights. The court viewed the "public forum" concept as a "continuum" with public streets and parks at one end and government institutions like hospitals and prisons at the other. The court concluded that article 1, section 2 of the California Constitution gave the Project the right to distribute its materials in the Visitors Center but no right to use the auditorium. The court said that the auditorium was built and used for large technical group meetings which did not qualify it as a traditional public forum. With respect to the Visitor's Center the court stated (at p. 1169): ". . . we consider it critically important for a government facility whose pryimary purpose is to describe and explain government activity or policy (which certainly includes the work of the Laboratory) to accommodate a meaningful exchange of views by the public. This decision reflects the high value placed in our state on the `free marketplace of ideas' and robust debate which are essential to the proper workings of our constitutional system. [Citations.]"

In *Northern California Newspaper Organizing Com.* v. *Solano Associates* (1987) 193 Cal.App.3d 1644 the court affirmed that the distribution of literature concerning a labor dispute in a privately owned shopping center, reasonably conducted, constitutes speech protected by article 1, section 2 of the California Constitution and held that the state court's jurisdiction was not preempted by the National Labor Relations Act.

*Judlo, Inc.* v. *Vons Companies* (1989) 211 Cal.App.3d 1020 involved the right of a weekly newspaper distributed free of charge to place its newsrack in front of a Vons grocery market located in the Las Palmas shopping center containing about 20 stores and restaurants which opened directly onto parking areas. For a time Vons allowed all newspapers to place their newsracks between the store and the parking area. After 12 to 20 newsracks had accumulated in front of its several markets, Vons decided so many were unsightly. When Judlo was asked to remove its newsrack from in front of the Vons market in the shopping center, Judlo sought an injunction, claiming that Vons had dedicated space for public use at its privately owned store, and thus had created a quasi-public forum for the exercise of free speech rights under the First Amendment and the California Constitution. The court rejected the claim that a quasi-public forum had been created and held that enjoining the placement of the newsrack would constitute an unconstitutional taking of private property for public use because it involved a permanent physical occupation of the property. The court did not cite *In re Lane*, *supra*, which is some indication that the court did not consider *Lane* to have precedential significance in a non-labor case.

California is not the only state which has a provision in its constitution which provides freedom of speech rights which have been held to be broader than those protected by the First and Fourteenth Amendments to the United States Constitution. We have found three cases which have applied free speech provisions in state constitutions to protesters on private property around an abortion clinic. We review those cases for such guidance to the application of article 1, section 2(a) of the California Constitution in similar cases here as the cases in other states may provide.

In *Brown* v. *Davis, supra*, 495 A.2d 900 the Cherry Hill Women's Center occupied space in one of three buildings situated on a two acre site which were separated by parking areas. The Center was a private medical facility which provided gynecological services including abortions. Prospective patients normally visited by appointment, but no appointment was necessary for a pregnancy test. In 1984 Lucille Brown entered a parking area to place campaign literature supporting an anti-abortion candidate on a parked automobile. When she refused to leave, she was arrested for trespass. Brown brought suit to enjoin the prosecution. The court held that the owner had not sufficiently dedicated the property to public use so as to entitle individuals to access for First Amendment activity, citing federal cases. The court observed that the New Jersey State Constitution had been interpreted more broadly than the Federal Constitution to permit the exercise of expressional rights on private property in certain circumstances, citing *State* v. *Schmid* (1980) 423 A. 615. In the *Schmid* case the defendant sought to distribute political literature on the campus of Princeton University. The court formulated a three prong test to ascertain the limits of the rights of free speech and assembly upon privately owned property and the extent to which such property reasonably can be restricted to accommodate those rights under the state constitution. The elements to be considered are "(1) the nature, purposes, and primary use of such private property, generally, its `normal' use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property." In applying this test to its facts the court in *Brown* observed (on p. 903) that "the Center is normally used by employees of tenants and prospective customers visiting specific businesses for the limited services made available to them. It is not a place to which a general consumer would go to shop for personal, household or general business merchandise." The court also observed that the advertisements and signs did not amount to a general invitation to the public at large to enter upon the premises. The court held that plaintiff was not entitled to enter defendants' private property against defendants' wishes to engage in the described expressional activity.

In *Bering* v. *Share, supra*, 721 P.2d 918 the Washington Supreme Court approved a limited injunction against picketing by anti-abortion protesters directly in front of a clinic in which abortions were performed which was claimed to violate the free speech provisions of both federal and state constitutions. The injunction restricted picketing to the public sidewalk north of the bus stop bench. In addressing the state constitutional issue the court stated (at p. 931) that although Washington extends broad protection to speech under the state constitution "reason dictates that Washington's protection does not extend to the picketing as described", i.e. (1) picketers were impeding ingress into and egress from the Medical Building, and (2) the aggressive, disorderly and coercive nature of the picketing and counseling created a substantial risk of harm to physicians, patients and visitors. The court added (at p. 931):

"Although the free speech clauses of the state and federal constitution are different in wording and effect, our confidence in the general federal analysis prompts our adoption of much of this methodology for application in state constitutional cases. We do diverge, however, from the Supreme Court on the State interest element of the time, place and manner test, as we believe restrictions on speech can be imposed consistent with article 1, section 5 [in the state constitution] only upon showing a compelling State interest.

"Henceforth, time, place and manner restrictions may be imposed whenever the right of free speech under article 1, section 5 has been abused, but only if the restrictions (1) are content neutral, (2) are narrowly tailored to serve a compelling State interest, and (3) leave open ample alternative channels of communication. In this case, our analysis of the place restriction under federal law leads us to the same conclusion under our constitution, and for the same reason. Accordingly, we hold

the place restriction in the permanent injunction does not violate article 1, section 5 of the Washington constitution."

In *Fardig* v. *Anchorage, supra*, 785 P.2d 911 the Court of Appeals of Alaska affirmed an order denying a motion to dismiss trespass charges against Kristine Fardig who was arrested when she refused to leave the parking lot of a private health center where she was distributing pro-life literature to its patrons. Fardig argued that the free speech clause in the Alaska Constitution gave her a right to distribute the literature in the parking lot. The court noted that the courts which had extended free speech rights under their state constitutions to private property involved large shopping centers or the campus of a large university. The court observed that "the small medical facility at issue in the instant case is hardly comparable to any of these facilities." (785 P.2d at p. 915) It quoted from the Alaska Supreme Court's decision in *Johnson* v. *Tait* (1989) 774 P.2d 185, language which the Fardig court said applied with equal force to its situation: "As a matter of law, the rationale in the shopping center and the university cases does not overcome the private autonomy of a small proprietor in the conduct of its business." The court held that Fardig's constitutional claims must fail because the health center's operation is not "public" in nature.

We agree with the characterization of the "public forum" concept applied to publicly owned property in freedom of speech cases as a "continuum" with public streets and parks at one end and hospitals and prisons at the other. *U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory, supra*, 154 Cal.App.3d 1157, 1164. We would similarly characterize the "quasi-public forum" (see *Judlo, Inc.* v. *Vons Companies, supra*, 211 Cal.App.3d 1020, 1024) concept applied to private property in freedom of speech cases as a continuum with a private dwelling on one end and the mall of a large shopping center on the other. Whether publicly or privately owned, the degree to which the general public is invited to use a particular facility or premises will vary depending upon the purpose and uses to which the owner devotes the property. The resolution of free speech issues will depend on whether the purpose and use of the facility or premises in question falls on the public or private side of the line drawn by the courts on the continuum of private property to which the owner has permitted some degree of public access.

Like the courts in New Jersey (see *Brown* v. *Davis, supra*, 495 A.2d 900.), we think California courts will consider the following two factors to be the most significant in determining whether private property is to be considered quasi-public property subject to the exercise of constitutional rights of free speech and assembly:

1. The nature, purposes and primary use of the property.

Some uses of private property are by their nature quite private, such as one's dwelling, while others are quite open and public such as a retail store with shoppers frequenting the merchandise on display. We think the myriad of service establishments falls somewhere in between. Service businesses such as the lawyer, doctor, and insurance agent, are patronized by those having need of the service but their access to the property is generally quite limited. (See the distinctions drawn between several categories of businesses in *In re Cox* (1970) 3 Cal.3d 205, 212 et seq.) In the case of the Planned Parenthood clinic the use is limited to those using or considering the use of only those medical services which relate to birth control, pregnancies and similar family planning matters together with the professional and support staff which provides the services. Even more specifically the question focuses upon the parking lot of the Planned Parenthood clinic. There the owner has made the purpose of the property quite clear by signs proclaiming that its use is restricted to patients and staff. This further limits the use of the property to only those patients and staff who have vehicles to park when attending the clinic.

2. The extent and nature of the invitation to the public to use the property.

In *Robins* v. *Pruneyard Shopping Center*, *supra*, the court noted: "Shopping centers to which the public is invited can provide an essential and invaluable forum for exercising those [free speech] rights." (23 Cal.3d at p. 910) In shopping centers the public generally is invited to come to the mall to mix with the crowds or just "hang out" whether or not they patronize the businesses in the center. It is this dimension of public use which the courts have likened to the town square, park or common which have long been the traditional location for exercising our constitutional free speech and assembly rights. The court in *Robins* expressly stated that it was not considering the property or privacy rights of an individual homeowner or the "proprietor of a modest retail establishment," making it doubtful that the court would extend state free speech rights to the latter. The nature of the invitation to the public extended by a retail establishment is usually for one and all to enter the property to view the merchandise on display. This invitation is extended both in its window displays and in its off-site advertising. The invitation is to the public generally, one and all, and is usually not directed to one segment thereof. If it is doubtful that the court would extend state free speech rights to a modest retail establishment, we think it is even more doubtful that it would extend such rights to a modest service establishment in which the services provides (and the invitation to enter) is limited to a small segment of the public. And of course the express invitation to use the parking lot in question is limited even further to those patients and staff having vehicles to park.

We conclude that California courts would hold that the trespass provisions of Penal Code section 602, subdivision (n) may be constitutionally applied to a person picketing or distributing leaflets on the privately owned parking lot of a small medical clinic providing family planning services including abortions where signs are posted stating tat use of the lot is restricted to patients and staff and the person refuses to leave at the request of the clinic owner.

* * * * *