TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1005 |
| of | : | |
| | : | February 13, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DICK ACKERMAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the owner of a mobile home park, the owner of an apartment complex, or the homeowners' association of a condominium project prohibit uninvited, nonresident political candidates from distributing their campaign materials door-to-door?

CONCLUSION

The owner of a mobile home park, the owner of an apartment complex, and the homeowners' association of a condominium project may prohibit uninvited, nonresident political candidates from distributing their campaign materials door-to-door.

ANALYSIS

The question presented for resolution concerns the door-to-door distribution of campaign materials by political candidates in mobile home parks, apartment complexes, and condominium projects. The distribution of materials is unsolicited; the candidates have not been invited by the residents, and "no solicitation" signs have been placed at the front walkways. May the owners **Footnote No. 1** of such developments ban all door-to-door distribution of campaign materials? We conclude that they may.

We begin our analysis with the general principle that an owner of property has the right to exclude any and all persons from the property. (See Pen. Code §§ 602, 602.5, 602.8; *Kaiser Aetna* v. *United States* (1979) 444 U.S. 164, 176; *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 731; *Posey* v. *Leavitt* (1991) 229 Cal.App.3d 1236, 1243.)

The right to exclude, however, is not absolute. (See, e.g., Pen. Code § 602.8, subd. (c)(2); *Rivcom Corp.* v. *Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 771-772, fn. 25.) The only exception that merits examination here **Footnote No. 2** is whether the political campaign materials may be distributed door-to-door as expressions of "free speech" protected by the federal or state Constitution.

Freedom of expression is protected by the First Amendment of the United States Constitution, as made applicable to the states by the Fourteenth Amendment. (*Stanley* v. *Georgia* (1969) 394 U.S. 557, 559.) "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." (U.S. Const., Amend. I.) The California Constitution also protects the right of free speech. It provides:

"Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).)

Recently the United States Supreme Court observed that "[l]eafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment . . . ." (*Schenck v. Pro-Choice Network* (1997) 519 U.S. ____, 137 L.Ed.2d 1, 21.) However, the constitutional protections for such activity are aimed at preventing interference by federal, state, and local governments with expressive activity that takes place in public areas, such as public sidewalks. **Footnote No. 3** They do not apply to individuals on *private* property, except in extremely limited circumstances. (See *Hurley* v. *Irish-American Gay Group of Boston* (1995) 515 U.S. 557, 115 S.Ct. 2336, 2344; *Hudgens* v. *NLRB* (1976) 424 U.S. 507, 513; *Planned Parenthood Assn.* v. *Operation Rescue* (1996) 50 Cal.App.4th 290, 300; *Judlo, Inc.* v. *Vons Companies* (1989) 211 Cal.App.3d 1020, 1028; *Cox Cable of San Diego, Inc.* v. *Bookspan* (1987) 195 Cal.App.3d 22, 29; *Laguna Publishing Co.* v. *Golden Rain Foundation* (1982) 131 Cal.App.3d 816, 835, 841.)

In *Planned Parenthood* v. *Wilson* (1991) 234 Cal.App.3d 1662, 1668, the court discussed the narrow protection of free speech rights in a situation where government action was not involved:

"Under the First Amendment to the federal Constitution, private individuals do not have an unqualified right to engage in free expression and assembly on private property. (*Hudgens* v. *NLRB* (1976) 424 U.S. 507, 518, 521 [no First Amendment right to picket a store in a privately owned shopping center]; *Lloyd Corp* v. *Tanner* (1972) 407 U.S. 551, 567-570 [no First Amendment right to distribute leaflets at a shopping center when the leafleting is unrelated to the shopping center's business or operation].) However, under very limited circumstances, individuals are entitled to exercise First Amendment rights on private property that has been sufficiently devoted to public use. (*Marsh* v. *Alabama* (1946) 326 U.S. 501, 506-507 [where

private property rights were held to yield to free speech rights regarding distribution of religious literature in a company-owned town, the functional equivalent of a municipality]; see *Hudgens* v. *NLRB*, *supra* 424 U.S. at pp. 516-521 [clarifying the narrowness of the *Marsh* exception, to be applicable only when the private property has assumed all the characteristics of a municipality].) Although the United States Supreme Court has held the First Amendment does not guarantee any rights of expression on private property such as a shopping center (*Lloyd Corp* v. *Tanner*, *supra*, 407 U.S. 551; *Hudgens* v. *NLRB*, *supra,* 424 U.S. 507), it affirmed *Robins* v. *Pruneyard Shopping Center*, *supra* 23 Cal.3d 899, where the California Supreme Court held the California Constitution (art. I, § 2) protects the expression and petition rights of California citizens even when those rights are exercised in a privately owned shopping center. (*Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74, 81.) More specifically, the United States Supreme Court held a state may give greater protection to individual liberties in its own constitution than is conferred by the federal Constitution. (*Id*. at p. 81.)"

As indicated in *Planned Parenthood*, the federal Constitution protects freedom of expression on private property devoted to public use in a "company-owned town" (see *Marsh* v. *Alabama* (1946) 326 U.S. 501), "involv[ing] the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semi-official municipal functions as a delegate of the State." (*Hudgens* v. *NLRB*, *supra*, 424 U.S. at 519.) Because mobile home parks, apartment complexes, and condominium projects do not assume such attributes or exercise such functions, the First Amendment does not afford nonresident political candidates the right to distribute campaign materials door-to-door against the wishes of the owners of such properties. **Footnote No. 4**

Our analysis of the First Amendment is helpful but does not control our analysis of the free speech guarantees of the state Constitution, since in certain circumstances, "the California Constitution provides greater protection than its federal counterpart for freedom of speech and the press." (*Brown* v. *Kelly Broadcasting Company* (1989) 48 Cal.3d 711, 745.)

Specifically, the First Amendment's protection of expressive activity in company towns has been extended in California to privately owned shopping centers serving as "the suburban counterpart of the traditional town center business block." (*Planned Parenthood* v. *Wilson*, *supra*, 234 Cal.App.3d at 1670.) In *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, affirmed on other grounds sub. nom. *Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74, the California Supreme Court ruled that a shopping center that provided a place for large numbers of the public to congregate was subject to the free speech guarantees of the California Constitution. (*Id*., at pp. 909-910.)

The shopping center exception in California, however, does not apply to "the property . . . of an individual homeowner or the proprietor of a modest retail establishment (*Robins* v. *Pruneyard Shopping Center*, *supra*, 23 Cal.3d at 910), medical office buildings with adjoining parking lots (*Feminist Women's Health Center* v. *Blythe* (1995) 32 Cal.App.4th 1641, 1654, 1660-1661; *Planned Parenthood* v. *Wilson*, *supra*, 234 Cal.App.3d at 1671-1672), the private sidewalk of a downtown bank (*Bank of Stockton* v. *Church of Soldiers* (1996) 44 Cal.App.4th 1623, 1629-1630), or a privately owned 150-unit apartment complex consisting of 16 buildings

(*Cox Cable San Diego, Inc.* v. *Bookspan, supra*, 195 Cal.App.3d at 28-30). In the *Cox Cable* case, the court explained:

"Nothing in the record suggests that the 150-unit Woodlawn apartment complex has the attributes of a quasi-municipality. The record does not indicate that Woodlawn has its own system of roads and streets, security force, parks, recreation facilities, self-government dealing with internal maintenance, security or operation of the complex or other indicia of a quasi-municipality. (Cf. *Laguna Publishing Co.* v. *Golden Rain Foundation*, *supra*, 131 Cal.App.3d at p. 843, fn. 10.)

"Nor is there anything in the record to suggest that Woodlawn is a quasi-public forum like a shopping mall where the public is invited to gather. Instead, Woodlawn is a place where the public is generally excluded, where an individual can escape the public forum by retreating into his or her apartment and closing the door." (*Id*., at p. 29.)

Similarly, here, the owners of a mobile home park, apartment complex, and condominium project do not provide a place where large numbers of the public are invited to congregate. The "shopping center" exception, like the "company town exception," is thus unavailable for political candidates wishing to distribute campaign materials door-to-door against the wishes of the owners.

We conclude that the owner of a mobile home park, the owner of an apartment complex, and the homeowners' association of a condominium project may prohibit uninvited, nonresident political candidates from distributing their campaign materials door-to-door.

\* \* \* \* \*

---

**Footnote No. 1**
With respect to the common areas surrounding individually owned condominiums, the homeowners' association may be considered the owner. (See *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499-501; *Duffey* v. *Superior Court* (1992) 3 Cal.App.4th 425, 428-429.)

**Footnote No. 2**
Since we are dealing with political candidates who are uninvited nonresidents, we need not consider the individual rights of the residents under various statutory schemes that are applicable to mobile home parks (e.g., Civ. Code, §§ 798-799.9), apartment complexes (e.g., Civ. Code, §§ 1940-1954.1), or condominium projects (e.g., Civ. Code, §§ 1350-1376).

**Footnote No. 3**
As stated in *Schenck*, "speech in public areas is at its most protected on public sidewalks, a prototypical example of a tradional public forum"; nevertheless, "[i]n some situations, a record of abusive conduct makes a prohibition on classic speech in limited parts of a public sidewalk permissible." (Ibid.) As explained below, the situation presented here does not involve government interference with speech activity in public areas.

**Footnote No. 4**
In *Laguna Publishing Co.* v. *Golden Rain Foundation, supra*, 131 Cal.App.3d at 836, the court described an eight-square-mile condominium complex of 20,000 residents, with its own system of roads, security force, parks, recreation facilities, and self-government, as having attributes that "in many ways approximate a municipality . . . close to a characterization as a company town." Nevertheless, while the court concluded that the owner of the complex could not discriminate by allowing one but not a second free newspaper to be distributed, it could deny distribution to all such newspapers equally. (*Id*., at p. 845.)

---